UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JUAN SOUSA, | | CASE No.   1:11-cv-01754-MJS (PC) |
| | Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| v. | | (ECF No. 10) |
| C. WEGMAN, et al., | | AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS |
| | Defendants. | |

**SECOND SCREENING ORDER**

**I.    PROCEDURAL HISTORY**

Plaintiff Juan Sousa is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed October 21, 2011 pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1.) On June 28, 2012, the Court dismissed the Complaint for failure to state a claim, with leave to filed an amended pleading. (Order Dismiss. Compl., ECF No. 9.) On July 13,

2012, Plaintiff filed a First Amended Complaint (First Am. Compl., ECF No. 10), which is now before the Court for screening.

## II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393–94 (1989).

## III.   SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff alleges he is a practitioner of a Mexican Indian (Aztec/Mayan/Toltec) religion. (First Am. Compl. at 4.) From late 2009 through September 2011 Defendant staff at Kern Valley State Prison ("KVSP") allowed Plaintiff access to the yard chapel to conduct Mexican Indian religious services and to the Native American religious program services.

(Id. at 3-4.)

In July 2011, Defendants Wegman (KVSP Community Resource Manager) and Ron Six Bears Alec (KVSP Native American Spiritual Advisor) completed a review of Plaintiff's proposed Mexican Indian religious program pursuant to the California Department of Corrections and Rehabilitation (CDCR) religious accommodation policy,[1] and determined the Mexican Indian program lacked a connection to the Native American Program sufficient to allow continued use of the Native American program. (Id. at 5.) Plaintiff was not thereafter allowed to access the Native American religious program. (Id.)

In September 2011, the KVSP Religious Review Committee ("RRC") completed its review of Plaintiff's proposed religious program for the Mexican Indian group and determined the group is not a religious group engaged in religious practice. (Id. at 5, 16.) Defendant Wegman thereafter advised Plaintiff his religious program lacked the religious structure and doctrine necessary to qualify for a religious service accommodation (Id. at 5), and denied him access to the yard chapel to hold Mexican Indian religious services. (Id. at 6.)

Plaintiff claims Defendants have violated his freedom of religion, due process, and equal protection rights under the First and Fourteenth Amendments. (Id. at 6.)

He names as Defendants C. Wegman, KVSP Community Resource Manager, and Ron Six Bears Alec, the KVSP Native American Spiritual Advisor. (Id. at 3.)

---

[1] See Cal. Code Regs. tit. 15, § 3210(d) (2012), "[a] request for a religious service accommodation that requires a specific time, location and/or item(s) not otherwise authorized, will be referred to a Religious Review Committee for review and consideration . . . ."; see also CDCR Operations Manual Article 6, § 101060.1, "[t]he Department shall make a reasonable effort to provide programs for the religious and spiritual welfare of all interested inmates."

-3-

He seeks declaratory relief and monetary compensation. (Id. at 3.)

## IV. ANALYSIS

### A. Pleading Requirements Generally

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 667-68.

### B. Free Exercise

Plaintiff alleges Defendants have prevented him from exercising his Mexican Indian religion.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his [or her] status as a prisoner or with the legitimate penological objectives of the

-4-

corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).

In order to implicate the Free Exercise Clause, the prisoner's belief must be both (1) sincerely held and (2) rooted in religious belief. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); see also Africa v. Pennsylvania, 662 F.2d 1025, 1029–30 (3rd Cir. 1981). The truth or falsity of the beliefs averred is not for the court to determine. Id. at 1030.

The court in Africa identified three "useful indicia", characteristic of accepted religions, against which a belief system may be measured: First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters; Second, a religion is comprehensive in nature, it consists of a belief-system as opposed to an isolated teaching; Third, a religion often can be recognized by the presence of certain formal and external signs. Id. at 1032.

1. Sincerely Held Religious Beliefs

a. Ultimate Questions

Ultimate questions are those having to do with, inter alia, "life and death, right and wrong, and good and evil", including does the religion take a position with respect to matters of personal morality, human mortality or the meaning and purpose of life? Id. at 1033. Generally speaking, religious beliefs flow out of, and embody a sense of a relationship to a supreme being or supernatural force which gives rise to "duties superior to those arising from any human relation." United States v. Seeger, 380 U.S. 163, 165 (1965). Traditional religions thus provide a way for man to order his life and adopt coherent positions with respect to matters of "personal morality, human mortality, or the meaning and purpose of life." Africa, 662 F.2d at 1033.

Here Plaintiff's Mexican Indian religious outline included in his First Amended

Complaint does not appear to take a position with respect to ultimate matters of morality, mortality, or the meaning and purpose of life. He identifies the existence of certain historic Mexican Indian deities, texts, prayers and rituals, but not facts of a belief structure with respect to ultimate questions.

### b. Comprehensiveness

"A religion is not generally confined to one question or one moral teaching; it has a broader scope. It lays claim to an ultimate and comprehensive 'truth'". Africa, 662 F.2d at 1035. In Malnak v. Yogi, 592 F.2d 197 (3d. Cir. 1979), the Science of Creative Intelligence was found to be a religion for purpose of the establishment clause "in part because of its comprehensive nature; its teachings consciously aimed at providing the answers to 'questions concerning the nature both of the world and man; the underlying sustaining force of the universe; and the way to unlimited happiness." Africa, 662 F.2d at 1035, quoting Malnak, 592 F.2d at 213.

Plaintiff's Mexican Indian religious outline fails to allege facts suggesting a comprehensive Mexican Indian religious belief structure. His citation to certain deities, texts, prayers and rituals lacks facts of comprehensive teachings and truths.

### c. Formal and External Signs

"Neither the trappings of robes, nor temples of stone, nor a fixed liturgy, nor an extensive literature or history is required to meet the test of beliefs cognizable under the Constitution as religious." Stevens v. Berger, 428 F.Supp. 896, 900 (E.D.N.Y. 1977), quoted in Africa, 662 F.2d at 1036 n.21. Thus, a belief system which otherwise demonstrates characteristics analogous to those of accepted religions may not be declared non-religious in nature solely because the outward signs of religion are missing. Id.

Nevertheless, the existence of such indicia as "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observance of holidays and other similar manifestations associated with the traditional religions" may be considered in determining whether the beliefs professed are religious in nature. Africa, 662 F.2d at 1035.

Plaintiff's religious outline fails to allege facts of formal religious services, ceremonial functions, the existence of clerics and clerical functions, the structure and organization of his Mexican Indian religion and efforts at its propagation. He does identify certain historic Mexican Indian rituals, holidays and artifacts, but these alone are not sufficient under the above indicia to suggest practice of a religious belief structure. See, e.g., Marria v. Broaddus, 2003 WL 21782633 at *8 (S.D.N.Y.2003), a Prisoner's beliefs both sincere and religious in nature are entitled to First Amendment protection under the free exercise clause where the prisoner lives by the teachings of his faith, observed its holidays to the extent possible under corrections regulations, where the faith carried the same significance for its members as Christianity, Judaism, and Islam did for their adherents, and where the faiths' contrasting belief system meant that one could not be a part of those religions.

Plaintiff fails to allege facts sufficient under the above standards and indicia to demonstrate sincerely held beliefs that are religious in nature and part of his religious practice. His general allegations appear to "lack[ ] the defining structural characteristics of a traditional religion." Africa, 662 F.2d at 1036.

        2.        <u>Failure to Accommodate</u>

Even if Plaintiff had sufficiently alleged sincerely held religious beliefs, there are no facts demonstrating a central tenet or mandated conduct thereof which Defendants failed

to accommodate. "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." Abobkr v. Mills 2008 WL 4937370, *2 (E.D. Cal. November 17, 2008) citing Freeman, 125 F.3d at 737, quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir.1987); see also Lau v. Harrington, 2012 WL 3143869, *8 (E.D. Cal. August 1, 2012). Plaintiff alleges no facts identifying a mandatory central tenet or belief activity with which Defendants interfered.

He also fails to demonstrate that Defendants' denying him access to Native American religious services was unreasonable. Restrictions on access to religious opportunities - whether group services, chapel visits, or meetings with religious advisers - must be found reasonable in light of four factors: (1) whether there is a valid, rational connection between the regulation and a legitimate government interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89–90 (1987); see also Beard v. Banks, 548 U.S. 521, 529 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058–59 (9th Cir. 1999).

Here Plaintiff alleges no facts suggesting entitlement to Native American religious services. He appears to concede as much in his administrative appeals. He has not factually supported a claim that Defendants acted unreasonably in this regard.

Accordingly, Plaintiff has failed to allege facts sufficient to support a First Amendment free exercise claim under the above standards.

The Court will allow **one final** opportunity to amend this claim. To the extent that Plaintiff elects to allege in his amended complaint a violation of his right to free exercise of religion, he must allege facts of (1) sincerely held religious tenets and beliefs including as to fundamental and ultimate questions, comprehensiveness, and fundamental and external signs, and (2) a substantial interference with conduct mandated by such tenets and beliefs lacking any legitimate penological interest, or an unreasonable restriction on his access to Native American religious services.

### C. Equal Protection

Plaintiff alleges Defendants discriminated against his status as a Mexican Indian religious adherent treating him differently from similarly situated adherents of Native American religion.

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), see also Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently (disparately) without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica,

526 F.3d 478, 486 (9th Cir. 2008).

The Equal Protection Clause protects prisoners from intentional discrimination on the basis of their religion, Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), citing Cruz v. Beto, 405 U.S. 319, 321-22 (1972), abrogated on other grounds by Shakur, 514 F.3d at 884-85, and entitles each prisoner to a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts. Shakur, 514 F.3d at 891. Prison officials can not discriminate against particular religions. See Cruz, 405 U.S. at 321-22; see also Rupe v. Cate, 688 F.Supp.2d 1035, 1049 (E.D. Cal. 2010).

To state a claim based on membership in a protected class, Plaintiff must allege facts that prison officials intentionally discriminated against him on the basis of his status as an adherent of Mexican Indian religion[2] by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz, 405 U.S. at 321-22; Shakur, 514 F.3d at 891.

Here, for the reasons stated above Plaintiff fails to allege a religious belief structure sufficient for First Amendment protection. Defendants apparently determined that Plaintiff was not entitled to status as a religious adherent. It follows that Plaintiff can not state an equal protection claim based on such status. The allegation that Defendants determined Plaintiff's beliefs are cultural rather than religious is not alone sufficient to state an equal protection claim.

---

[2] "A plaintiff must show that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

The Court will allow **one final** opportunity to amend this claim. To the extent that Plaintiff elects to allege in his amended complaint a violation of his right to equal protection, he must allege facts of Defendants' intentional discrimination against him based on his status as adherent of Mexican Indian religion, or that similarly situated individuals were intentionally treated differently (disparately) without a rational relationship to a legitimate state purpose.

### D.     Due Process

#### 1.     Procedural

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Plaintiff has not alleged any facts that would support a claim that he was deprived of a protected interest without procedural due process.

#### 2.     Substantive

"To establish a violation of substantive due process . . . a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.

Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466–68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

-11-

"[R]easonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." Salahuddin v. Coughlin, 591 F.Supp. 353, 360 (D.C.N.Y. 1984).

Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).

Plaintiff has not specifically identified a liberty interest. His free exercise and equal protection claims are covered by the more explicit clauses of the First and Fourteenth Amendments respectively, rather than the Due Process Clause. Furthermore, "[l]imitations on religious services . . . have also been found not to present an atypical and significant hardship." Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003). He makes general allegations of inability to practice his claimed Mexican Indian religion, but but does not tie the allegations to any liberty interest and arbitrary and unreasonable action by Defendants. Plaintiff has not alleged any facts that would support a claim that his rights under the substantive component of the Due Process Clause were violated.

Plaintiff will be given **one final** opportunity to amend this claim. In his amended complaint, Plaintiff should explain which, if any, process due him was denied, or what if any hardship amounted to a deprivation of a specific liberty interest and Defendants' arbitrary and unreasonable action with regard thereto.

///////

### E. Declaratory Relief

Plaintiff requests a declaratory judgment that Defendants violated his constitutional rights. With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir.1985).

In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. A declaration that Defendants violated Plaintiff's rights is unnecessary.

## V. CONCLUSION AND ORDER

Plaintiff's Complaint does not state a claim for relief under § 1983. The Court will grant him **one final** opportunity to file an amended complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 667-68. He must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). He must also demonstrate that each named Defendant personally participated in a deprivation of his rights under color of state law. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it

is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). He should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint", refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of his First Amended Complaint filed July 13, 2012,

2. Plaintiff's First Amended Complaint is dismissed for failure to state a claim upon which relief may be granted,

3. Plaintiff shall file an amended complaint within thirty (30) days from service of this order, and

4. If Plaintiff fails to file an amended complaint in compliance with this order,

this action shall be dismissed, with prejudice, for failure to state a claim and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g). Silva, 658 F.3d at 1090.

IT IS SO ORDERED.

Dated:   August 20, 2012                      /s/ *Michael J. Seng*
                                                           UNITED STATES MAGISTRATE JUDGE