UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN SOUSA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>C. WEGMAN, et al.,<br><br>　　　　Defendants. | Case No. 1:11-cv-01754-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION TO:**<br><br>　**1) DENY MOTION TO STRIKE (ECF No. 53)**<br><br>　**2) DENY MOTION FOR SUMMARY JUDGMENT (ECF No. 47)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

### I. PROCEDURAL HISTORY

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 5.) The matter proceeds on the free exercise claim in his Second Amended Complaint against Defendant Wegman, Community Resource Manager at Kern Valley State Prison ("KVSP"). (ECF No. 13.)

On May 11, 2015, Defendant Wegman filed a motion for summary judgment. (ECF No. 47.) Plaintiff filed an opposition (ECF No. 49) and a separate statement of undisputed facts (ECF No. 50) on May 29, 2015. Defendant filed a reply, a response to Plaintiff's statement of undisputed facts, and a motion to strike some of Plaintiff's statements of undisputed facts. (ECF Nos. 51-53.) The Court has also considered the contents of Plaintiff's signed, sworn "Declaration in Support of Civil Rights Complaint," which he filed with his Second

1

Amended Complaint on September 4, 2012. (ECF No. 12.)  See <u>McElyea v. Babbitt</u>, 833 F.2d 196, 197-198 (9th Cir. 1987) (permitting consideration of verified complaint in opposition to motion for summary judgment).

## II.     MOTION TO STRIKE

Defendant moved to strike paragraphs 1, 2, 4, 5, part of 8, and 9 of Plaintiff's Statement of Undisputed facts (ECF No. 53). The Court has considered the Defendants' objections.  Because the Court's ruling does not rely on the objected-to statements, the Court will DENY Defendant's motion to strike as unnecessary.  See <u>Abdullah v. Specht</u>, No. 2:13-cv-0446 2013 WL 5703347, at *3 (E.D. Cal. Oct. 18, 2013); <u>Parkison v. Butte Cnty. Sheriff's Dept.</u>, No. 2:09-cv-2257 2013 WL 1007214, at *8 (E.D. Cal. Mar. 13, 2013).

## III.    MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Wash. Mut. Inc. v. United States</u>, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him.

2

Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). However, "conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Angle v. Miller, 673 F.3d 1122, 1134 n.6 (9th Cir. 2012) (citing Soremekun, 509 F.3d at 984).

**IV.  FACTUAL SUMMARY**

The Court finds the following facts to be undisputed:

At the time of the events giving rise to this suit, Plaintiff was incarcerated at KVSP. Plaintiff sincerely holds Mexican Indian beliefs.

Plaintiff filed a grievance in 2009 asking to have a sweat lodge ceremony for his Mexican Indian religion.  The grievance was partially granted insofar as Plaintiff was invited to participate in Native American sweat lodge ceremonies; Plaintiff objected because he is not Native American, and requested to establish the Mexican Indian religion at KVSP.   The grievance was denied at subsequent levels of appeal because Plaintiff failed to submit sufficient written material explaining his religion or a Federal Roll Number;[1]  the invitation to participate in Native American ceremonies was reiterated. (ECF No. 47-8, at 21-22.)

Subsequently, a "Mesoamerican" religious group was allowed to assemble in the chapel

---

[1] The Bureau of Indian Affairs tracks membership in Native American tribes using roll numbers.

3

and Plaintiff was permitted to attend services for about a year, through late 2011, but not thereafter. (ECF No. 47-7, at 5-6.)

In addition to chapel services, Plaintiff unsuccessfully sought access to the ceremonial grounds for sweat lodge and fire ceremonies for the group. The Native American chaplain opposed such use. (ECF No. 47-4, at 27.) In June 2011, Defendant denied Plaintiff's request for ceremonial items and use of the chapel to celebrate Mexican Independence on the grounds that the Mexican Indian religion was not an "authorized group," according to the Departmental Operations Manual. Plaintiff asked to be added to the Manual; Defendant denied she had the authority to do so. (ECF No. 47-4, at 19.)

In July 2011, Plaintiff filed another grievance requesting recognition of his religion, to purchase religious items and to hold banquets on the Day of the Dead and at Winter Solstice. He accompanied his grievance with prayers and background information about the Mayan/Toltec faith, outlined significant religious practices, symbolism, and mythology, and characterized his faith as a religion, not a cultural organization (ECF No. 47-5, at 6.) Plaintiff's grievance was denied at all levels on the grounds that Plaintiff's materials "describe[d] a historical and political philosophy," not the tenets, doctrines, or rituals of a religion. (ECF No. 47-5, at 22.) Defendant advised Plaintiff that "the Mexican Indian group has no connection to any American Indian tribes nor do they understand the ways of the American Indian." (ECF No. 47-4, at 20.)

On August 9, 2011, Defendant informed Plaintiff that the Religious Review Committee had determined the Mexican Indian Group was not a religious group, but "welcomed" him to participate in the "Traditional Native American" program. (ECF No. 47-4, at 21.) Defendant reiterated this conclusion in a memorandum from September 19, 2011. (ECF No. 47-4, at 22.)

Both parties agree that the American Indian/Native American religion and Plaintiff's

4

asserted Mexican Indian beliefs are not the same.  (ECF no. 47-7, at 11; ECF No. 47-4, at 20).

### III. PARTIES' ARGUMENTS

#### A. Defendant's Arguments

Defendant Wegman sets forth four arguments in support of summary judgment. First, she argues that she could not have violated Plaintiff's First Amendment rights because Plaintiff had not "provided sufficient information to establish his religion." ECF No. 47-2, at 10.)  Second, she argues that even if he had provided sufficient information, she accommodated his beliefs adequately by permitting him chapel for a limited time and "authorizing him to participate in the Native American and Mexican Indian services." (Id.) Third, she argues that "discontinuation of religious services was warranted" because there was a legitimate penological interest in preventing gang activity, and it was known that several members of the Mexican Indian Group were members or associates of the 2-5 gang.  Finally, she argues she is entitled to qualified immunity.

#### B. Plaintiff's Arguments

Plaintiff affirms that his religious beliefs are sincere and that his religion is legitimate. He characterizes his religion as the modern iteration of the ancient indigenous Mayan/Aztec/Toltec faith. He identifies some of the key practices in his religion as "the use of a sweat lodge ceremony" (ECF No. 49, at 3) and group worship, which includes singing songs, dancing, and worshipping Quetzalcoatl, whom he asserts shares some of the attributes of a Christ figure. (ECF No. 12, at 8.)  He claims he submitted sufficient supporting information about his faith, but Defendant never actually examined the structure of the religion. (ECF No. 12, at 7.) He claims a BIA Federal Roll number, indicating membership in a Native American tribe, is not necessary to establish his traditional Mexican faith.

5

In response to the argument that the religion promotes and/or is a front for gang activity, Plaintiff notes that all inmates on his yard are present or past gang members. He asserts he no longer has any affiliation with gangs (ECF No. 47-7, at 12-13) and that his Mexican Indian religion has nothing to do with gangs or gang activity (ECF No. 50, at 2.) He argues that "inmates' behavior outside of religious observations should not exclude them from being allowed access to religious groups." (ECF No. 49, at 4.)

## V.      LEGAL STANDARD – FIRST AMENDMENT FREE EXERCISE

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972); see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) ("Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to maintain institutional security and preserve internal order and discipline. Bell v. Wolfish, 441 U.S. 520, 546 (1979).

The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85; see also Lau v. Harrington, 2012 WL 3143869, *8 (E.D. Cal. August 1, 2012).

Restrictions on access to religious opportunities must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether

accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89–90 (1987); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999).  Accordingly, prison regulations and operating procedures require reasonable efforts to provide for the religious and spiritual welfare of inmates.[2]

**VI.   ANALYSIS**

**1. Sincerity of Plaintiff's Mexican Indian Beliefs**

Defendant does not dispute Plaintiff's assertions (1) that his Mexican Indian beliefs are sincere, or (2) that group worship and sweat lodge ceremonies are consistent with these beliefs.  (See ECF No. 47-4, at 21.)

**2. Religious Nature of Plaintiff's Beliefs**

The parties do dispute whether Plaintiff's beliefs are religious in nature.  Defendants' materials in support of summary judgment contain background information regarding Mexican Indian traditions and mythology. (ECF No. 47-5, 8-21.) Plaintiff characterizes his beliefs and the singing, dancing and prayer during services as religious.

A court's inquiry into the religious nature of a prisoner's belief should be limited, United States v. Seeger, 380 U.S. 163, 184-185 (1965), and the Free Exercise clause mandates a "generous, functional (and even idiosyncratic)" definition of religion. United States v. Ward, 989 F.2d 1015, 1019 (9th Cir. 1992). The focus is not on whether the beliefs are "true," but whether they are "truly held."  See Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005).  "Religious beliefs need not be acceptable, logical, consistent, or

---

[2] See Cal. Code Regs. tit. 15, § 3210(d), "A request for a religious service accommodation that requires a specific time, location and/or item(s) not otherwise authorized, will be referred to a Religious Review Committee (RRC) for review and consideration. The RRC shall be comprised of designated chaplains, and a correctional captain or their designee. Accommodation for religious services that are not granted, shall be for reason(s) which would impact facility/unit safety and security, and orderly day to day operations of the institution. See also CDCR Operations Manual Article 6, § 101060.1, "The Department shall make a reasonable effort to provide programs for the religious and spiritual welfare of all interested inmates."

comprehensible to others in order to merit First Amendment protection." Thomas v. Rev. Bd. of Indiana Emp't Sec. Div., 450 U.S. 707, 714 (1981). An inmate need not be part of an organized religious sect or group in order for his beliefs to be considered religious. Conner v. Tilton, No. C 07-4965 2009 WL 4642392, at *6 (N.D. Cal. Dec. 2, 2009)(citing Frazee v. Ill. Dep't of Emp't Sec., 489 U.S. 829, 834 (1989)). Nor must a prisoner adhere to all tenets of a religion or espouse beliefs shared by all members of his faith. Shakur, 514 F.3d at 883. A prison may not condition a prisoner's access to religious services on his possession of particular religious items, see Wall v. Wade, 741 F.3d 492, 499-500 (4th Cir. 2014), or his membership in a particular ethnic group. See Morrison v. Garraghty, 239 F.3d 648, 657 (4th Cir. 2001). Moreover, while the fear that "prison gangs use religious activity to cloak their illicit and often violent conduct" is a legitimate and longstanding one, it does not justify the suppression of legitimate religious activity on that basis. See Cutter, 544 U.S. at 725 n. 13.

Although there is no definitive test to determine whether or not set of beliefs is religious, the Third Circuit in Africa v. Pennsylvania identified three "useful indicia," to assist courts in this inquiry. 662 F.2d 1025, 1031 (3d Cir. 1981); Alvarado v. City of San Jose, 94 F.3d 1223, 1229 (9th Cir. 1996)(using Africa criteria to conclude that "New Age" was not a religion for Establishment Clause purposes); PLANS, Inc. v. Sacramento City Unif. Sch. Dist., 752 F.Supp.2d 1136, 1140-1145 (E.D. Cal. 2010)(ditto for "anthroposophy"). First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature, encompassing a belief system, rather than isolated teachings. Third, a religion often can be recognized by the presence of certain formal and external signs. Africa, 662 F.2d at 1032.

The Court found in its screening order that Plaintiff's pleadings met the three-prong test set forth in Africa. (ECF No. 13, at 5-8) Defendants have not rebutted the factual basis

for this finding with anything more than insistence that Plaintiff's beliefs are not religious.

Federal courts in California and other circuits have treated traditional Mexican/Aztec/Mayan beliefs as religious. See Longoria v. Dretke, 507 F.3d 898, 903 (5th Cir. 2007); Diaz v. Collins, 114 F.3d 69, 72 n.13 (5th Cir. 1997); Alvarez v. Cate, No. C11-2034 2013 WL 890483 (N.D. Cal. Mar. 8, 2013); Chavez v. Lewis, No. C-11-0376 2012 WL 2906134, at *7 (N.D. Cal. July 13, 2012); see also Alvarado, 94 F.3d at 1231-1232 (acknowledging that while "the worship and cult of Quetzalcoatl is making a resurgence," Quetzalcoatl statue's resemblance to cult's religious symbols did not mean that city was advancing religion by placing statue in park). Accordingly, the Court finds that there is an issue of disputed fact regarding the religious nature of Plaintiff's beliefs.

### 4. Substantial Burden

There also is a dispute over whether Defendant substantially burdened Plaintiff's right to exercise his religion. However, denial of Plaintiff's requests to attend religious services and observe holiday celebrations, to use the sweat lodge, and to obtain formal recognition for his religion, as well as conditioning his ability to obtain recognition on tribal membership and ethnicity, are here found to be substantial burdens. See McElyea, 833 F.2d at 198 (denial of Sabbath services was a substantial burden); Rouser v. White, 630 F.Supp.2d 1165, 1188 (E.D. Cal. 2009) (defendants' denial of chapel access and religious items gave rise to Free Exercise violations). Offering participation in the services of the admittedly distinct Native American group does not alleviate the burden.

### 5. Penological Justification

On the surface, the prison's stated reason for discontinuation of services -- concern that they might be used to aid gang activity -- is compelling. Preventing prison gang activity is of course a legitimate penological objective. However, the facts submitted do not support a rational fear in this regard sufficient to justify the wholesale suppression of the Mexican

9

Indian group's activities.   The primary rationale for linking the group to gangs, the affiliation of a few of the 60 adherents to the 2-5 gang, is not compelling, particularly where Plaintiff has observed without refutation (ECF No. 52, at 2) that virtually every inmate on his yard is now or previously was a gang member. Plaintiff denies that the former Mexican Indian services were actually used to promote gang activity, and Defendant provides no evidence that they were.  Defendants have not produced evidence that there was "no viable but less restrictive alternative to a broad ban" on religious services for Mexican Indian practitioners. See Alvarez v. Cate, No. C-11-2034 2013 WL 890483, at *6 (E.D. Cal. Mar. 8, 2013). Neither party describes the prison's burden of providing Mexican Indian services.  In short, neither party has provided sufficient evidence to enable the Court to finally determine the Turner factors. Accordingly, the Court finds that Defendants are not entitled to summary judgment on Plaintiff's Free Exercise Claim.

**VII.    QUALIFIED IMMUNITY**

"A state officer is not protected by qualified immunity where he or she has violated a clearly established constitutional right." Phillips v. Hust, 588 F.3d 652, 657 (9th Cir. 2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was not unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

Here, the Court finds that Defendant is not entitled to qualified immunity.  The right, subject to Turner, of non-SHU prisoners to exercise their sincerely held religious beliefs by engaging in group worship and possessing some religious items is well-established. See, e.g., O'Lone, 482 U.S. at 352; McElyea, 833 F.2d at 198; Rouser, 630 F.Supp.2d at 1188. Thus, the Court cannot find here that a reasonable officer would believe it was lawful to completely deny Plaintiff's ability to obtain religious items and attend group services and holiday celebrations of his Mexican Indian faith.

## VIII.   CONCLUSION AND RECOMMENDATION

The Court finds that Defendant has not met her burden of showing an absence of a dispute of material fact regarding whether Plaintiff's First Amendment Rights were violated. In addition, the Court finds that Defendant is not entitled to qualified immunity.  Based on the foregoing, the Court HEREBY RECOMMENDS that Defendant's motion to strike (ECF No. 53) and motion for summary judgment (ECF No. 47) be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   June 29, 2015                         /s/ *Michael J. Seng*
                                                              UNITED STATES MAGISTRATE JUDGE